We will hear argument next in Montelongo v. OPM, case number 18-2095. Mr. Shorhibrod? Yes, Judge. May it please the Court. Close? Close, very close. May it please the Court. Alan Shorhibrod on behalf of Tully Rankine for the petitioner Michael Montelongo. The central facts are non-disputing this appeal. It's really grounded on the pure legal issue, whether cadet service in the United States Military Academy counts for the five-year threshold of creditable civilian service for a title to a deferred FERS annuity. Briefly, petitioner was a cadet at West Point for four years. In the 1970s, he went on to serve in the military, retired as lieutenant colonel with the Army. That service is not an issue in this case, his service with the Army. He later went on to become, in 2001, a presidential appointee. At the time he was serving, that CSRS was still in effect, right? FERS hadn't come into play. Yeah. At the time he became a presidential appointee, he was a president. Well, I just want to just history, because as I recall, then CSRS at that point in time was clear that the service in the academy didn't qualify. At the time he was serving, if he bothered to look this up, he would have known that CSRS said it doesn't qualify. Yes, your honor. At this point of the appeal, what we believe does qualify cadet service is the National Defense Authorization Act of fiscal year 2008, which amended the FERS and CSRS statutes that specifically refer to the definitions under those statutes. And that statute defines cadet service as military service, correct? Yes, and that's respondent's argument and what the board found. But that's true, isn't it? Well, what's important about the defense authorization . . . Yes, or is that a yes or no answer? I think it deserves one, doesn't it? The plain reading of the authorization act does have cadet service . . . As military service. As military service, but what's important is what follows that amendment. As section 1115 specifically applied that definition to any annuity of eligibility for which is or for any period of service as a cadet in the academy before, on, or after the date of enactment. So even if cadet service is what we said in our brief, pure military service, the NDAA of 2008 would actually save it because cadet service specifically applies to any annuity which falls under the eligibility aspect of . . . Cadet service, this is just an effective date provision so that in order to figure out which individuals are going to get the benefit of what the act does, it looks at their eligibility date. Yes, it does look at eligibility, but it also, prior to the NDAA, it was questionable whether cadet service even counted for the buyback provisions of military service. It's not on the record, but this act specifically makes it clearer that . . . This lets it be counted for the buyback purposes, but it still doesn't address the fundamental question of what is eligible civilian service under 8410, does it? I mean, you're asking us to implicitly say that this provision in the Defense Authorization Act doesn't talk to the fundamental eligibility requirements of how implicitly amended the definition of civilian service. Explicitly, the NDAA doesn't say whether or not eligibility falls within that cadet service aspect. However . . . 8410 is pretty explicit, right? It says you have to have five years of civilian service to get a FERS anybody. Yes, but it also says credible civilian service under Section 8411, and 8411 sub c talks about military service being credible. But it doesn't make it credible civil service. It allows you to buy back military service and count it towards your ultimate annuity, but it still doesn't transform the nature of it from military service to civil service, does it? Well, our position is that cadets . . . I mean, 8411 has a lot of different provisions, and it's not, here are the kinds of civilian service. It's a lot of different ways to credit different kinds of service throughout the federal government towards annuities. And when it says credible under 8411 for purposes of 8410, isn't it just saying, look to 8411 to determine what civilian service is credible and what's not? Isn't that a fairer reading of it? I believe that's fair reading. I also believe fair reading is the statute provides that 8411 defines what credible civilian service is as well. Where does it say it's defining credible civilian service? Well, 84 . . . It's titled credible civil service, not credible civilian service. Sure. And civilian service, our position is creditable and does include military service, but I think the nature of cadet service is quite different than actual military service. You're not trying to argue that cadet service is civil service, are you? I mean, the very act you were pointing us to, to clarify, this still includes cadets under military service. Yes, Your Honor. But for example, OPM's implementing regulations for FERS at 5 CFR 842.304 sub B defines civilian service to include service credit in the cadet nurse corps. That, in addition to the nature of what cadet service actually is, these individuals are students, they're trainees, they're not active duty military. The potential is that they do become officers later on after they finish their education. But at the time they're in that cadet service, it doesn't really count for much. It doesn't count for military retirement purposes, especially for officers. So that happens all the time with all kinds of civil service too. There are certain positions in the federal government that you work for the federal government, you get paid by the federal government, and it's not creditable. It's not even that it makes you eligible, it's not creditable at all. So the fact that cadets may honorably serve at these military academies and not get credit for them sometimes, why isn't that just a function of Congress's decision not to put it towards either military or civilian service? Although it's clear now, I think we all agree that you can use it to add on, but it's still the baseline for civilian annuities has always been five years of civil service. And I don't understand how something that's specifically defined in the statute as military service could ever be considered towards that basic eligibility requirement. Well, Your Honor, respectfully, I believe it's just the nature of what cadet service is and how cadet service is treated by OPM in different contexts. We've referenced- But you don't mean military academy service. Well, for example- Well, let me back up. I understand OPM's regulations on this are somewhat confusing. OPM could do a much better job of clarifying things. Everybody knows this. But you know that that isn't an argument for somehow stopping the government or reading this plain language of the statute some other way, right? That's what Richmond says. Sure. And Your Honor, I understand you were on the panel for Reed, which is a non-presidential decision that weighs in favor of the respondents here. But Judge Toronto, you were on Solinsky, where in that decision, although it was not dispositive to the opinion, that opinion actually wrote that the court noted by statute the federal employee must complete at least five years of credible civilian service to include military service if that employee made a required deposit. Well, the government has conceded in its briefs that that was a mistake. Uh, the government- The line in that opinion comes directly out of the government's brief in that case, literally quoted in that non-presidential opinion. And the government has conceded in its briefs here. And I understand non-presidential decisions have no binding impact on this court. But it does seem- It was dicta also, right? It was dicta. But Solinsky and Reed- Dicta in that case, and you've got a holding in the later case. Yes, the Reed case is later. The Reed case, however, was different as our position was or is. That was pure military service. That was first service member, active duty service person who's trying to buy back the military time to tack on to their five-year requirement. Here, we're saying that cadet service is its own hybrid, just like dual status technicians, national technicians. Well, that would be okay if you had some kind of statutory language that said that. But you have the opposite that specifically defines cadet service as military service. Yes, but we believe that if we read section 1,115 of the NDA further, it does apply to any annuity and it falls under the eligibility requirements. Okay, can I follow up on something? I think I heard you say that, at least I didn't remember. Did you make a reference to an OPM regulation speaking to nurses corps? Yes, Your Honor. So first, what does it say? And second, did you put that in your brief? Yes, it is in the brief, and I can cite you to the page in the brief. But what page? The regulation is 5 CFR 842.304 sub B. We cite it in the brief at pages 11, 22, and 23. So in that full second paragraph on the bottom, similarly, that regulation defines civilian service to include, among other things, service credit in the cadet nurse corps, which we believe provides substantial evidence that cadet service is treated quite differently than pure military service. For example, 5 USC 2102 includes under the definition of an employee, an individual who works at various positions at the U.S. Naval Academy. Again, this supports substantial evidence that the military academies are treated differently than other military components. We understand that it's been this court's precedent. I don't understand that argument. Is that just saying some people that work at the academy are in the civilian service and some are in the military? Yes. But that's true even at military bases. There are tons of civilian service employees at military bases that are not enlisted or otherwise officers that do work on a military base and perform civilian service. The fundamental difference is, is their service defined as military service or civilian service? And the only decision on point is the Brown decision that the respondents briefed, the 1989 precedential decision. But our position is that predates the 2018 NDAA and also predates the manner which cadets were able to buy back such military service. And also our reading of that section of the Authorization Act, in our opinion, states that... Let me, so your position is because of the way 8410 and 8411 are structured in this NDAA, or even setting aside that NDAA, you can buy back military service to count as civilian service for purposes of establishing entitlement to a civil service annuity. Our position is actually much more narrow. It's not all military service with this particular cadet service. But how do you limit that? Since the provision you're relying on in 8411 doesn't just relate to cadet service, it relates to all military service. It does include under subsea military service and the time periods, but our position... I mean, the logical extension of your argument is it not that if you want to buy back military service, you can buy back five years of military service, say it's civilian service, and then get a civil service annuity. Well, logically, yes. But it's not the first question. We're not dealing with just the facts as applied to your case. We have to deal with the logical extensions of that. And I mean, it seems fairly unlikely that Congress intended somebody to be able to serve in the military, never serve a single day of civilian service, but buy back five years or however many years and get a civil service annuity instead of a military service annuity. But our facts are quite different. Again, I understand. But the legal position you're relying on has a logical consequence. And in 8410 and 8411, the way you're reading the interplay would seem to suggest that result. Again, this court's precedent never ruled in that way. The Brown case, obviously, rules the other way, that military service is not necessarily defined as civilian service for purposes of the first statute. The re-decision also, that non-presidential opinion, makes that same conclusion. Our position here is not pure military service like active duty, Title X, even Title 32. Do you know how much your client had to pay in a deposit to try to get this credited? Yes, I believe it's in the record. $452? Yes, it's approximately $500, $400. And at that time, he was serving at the Air Force as a civilian. If there are no other questions, I'll reserve my time. Thank you. And you'll have three minutes for rebuttal. I please the court. The court should affirm MSCB's decision, which had affirmed OPM's decision, denying Mr. Montelongo's application for a basic annuity. The statute in this case is clear. It provides that you need five years of civilian service, at least five years of civilian service to be eligible for an annuity. It has long been the case, even before FERS, under the Civil Service Retirement System, that you had to have five years of civilian service. And civilian service is distinct and different from military service that's borne out by the cases. And as the case is explained, including in Reed, you can't use military service to satisfy a threshold, a civilian service requirement. I know it's not a lot of money, but if he relied on bad advice from somebody at the Air Force, I mean, can he at least get his deposit back from OPM? Your Honor, in a November 2017 letter to Mr. Montelongo, it was explained how he could go about requesting a refund of his contribution. And standing here today, I don't see any reason that that couldn't happen. In Reed, Your Honor— Were contributions taken out while he was in the civilian service as the assistant secretary? I believe that to be true. And there's a way to get those back too, isn't it, if you don't qualify for retirement? Yes, Your Honor. And this case can be decided just based on the plain language of the statute. To read the statute otherwise, as Reed explained, would render the word civilian superfluous. And in Reed's own point—and Reed addressed Brown, and Brown's own point as well—Sierlinski didn't address Brown. And unfortunately, and we apologize, Your Honor, we included a statement, a misstatement of the requirement in there. But ultimately, it wasn't controlling as to the outcome of Sierlinski. And that's because— Well, what are we to do with the fact that OPM and the people who administer these laws disagree with you? You've got OPM's, you know, rules and regulations that are out there to guide the public. And then you've got counselors who are working with those rules and regulations. And they're telling people, like the plaintiff in this case, you have a winning case. I think you're referring to the advice that he received from an HR representative? Yeah, and also I'm referring to the confusing OPM regulation. The manual that's been cited? Yes, the manual. And we don't think it's confusing, Your Honor. Well, you've got three panels of this Court that disagree—perhaps this one, at least two, disagree with you. Well, Your Honor, that's a chapter of the manual with respect to credible military service. We don't think you need to look at the manual. As Reid said, ambiguous language can't be—the language in the manual can't overrule a clear statute. You could look elsewhere. We don't think— I understand that. But, I mean, you've actually got a counselor here who says, well, I agree with you. The manual is very confusing, and you've got a good argument. I mean, what—I'm just trying to get with you to say what the government doesn't care that there's a manual out there that is perhaps misleading? Certainly the government would care. And I would direct, Your Honor—I don't want to get too far afield. I would direct, Your Honor, to Chapter 45 of the manual, which discusses deferred retirement. There is clear language in there about military service not being used for civilian service. The language pointed to by Mr. Montelongo is not ambiguous. It's not confusing. It's been used by him to argue that military service can be used to satisfy it. Just by him, by people who administer the laws, the counselors. What? I didn't— The counselor. The counselor agreed with him, said manuals—you've got an argument based on the manual. Oh, he said you had an argument. I don't know that he necessarily agreed that he was entitled to an annuity. I think you're referring to the evidence that Mr. Montelongo put forward that someone at OPM said he had—he had written the exact language he used. But I don't know— It basically said, go to the board. Something needs to be figured out. I don't read the evidence the way that OPM was agreeing with him that he's entitled to an annuity. So Brown is a presidential decision, and at some point it explains that military service can't be used to satisfy a threshold civilian service requirement. By statute, a cadet time is military service under Section 8401, the definitions. When Mr. Montelongo was at the academy, he was not an employee in the employment of the civil service. There has been no showing of that. It's defined as military service. In this court, in cases discussing 10 U.S.C. Section 971, which addresses— Do cadets get paid? I believe that cadets do get paid. I believe they have health care. I believe— Out of what budget they get paid? I'm not sure what—out of what budget, Your Honor. And I think they're defined as— Shouldn't you know? I mean— Well, it's not—it's Mr. Montelongo's obligation to prove that— It's not a question that you wouldn't— I would be speculating. Mr. Montelongo stated—Mr. Montelongo's counsel stated that he was not in active duty. I believe the cases that the court—in which the court addresses Section 971 explain that, at least for VA benefits, it's defined as active duty, and you look to 38 U.S.C. Section 101. So Mr. Montelongo was not a civil service employee when he was a cadet, and it would be ultimately his burden to show that he had a total of five years. He was only in civil service for less than four years after he retired from the military, and so based on the plain language of the statute, this court should affirm the misdemeanor's decision. Is it common that members of the military who do have their five years of serving service will have both a civilian and a military retirement? Well, to be eligible for—so say someone that worked in the military for a few years and then came to the civil service, well, they wouldn't—generally speaking, they wouldn't be receiving a retirement if they had five years of military service, came to work for the civil service. After five years in the civilian service, they'd be eligible for an annuity. Well, I'm talking about a situation like somebody who served a long time in the military, has a military pension. I thought there was something in the OPM manual about the fact that you had to So generally, there wouldn't be double counting. You wouldn't be receiving a military retirement and a civil service retirement for the same, generally speaking, for the same years of your service. So if you make the payment and get the military service credited, you can't also get a military pension on that. That's the general rule. But if you serve in the military for 20 or 25 years, retire, and then come work for the federal government and qualify for a civil service annuity based only on civil service and don't make that credit, you can get both retirements. Can you not? Yeah, you can get military pay, retirement, and your civilian service retirement. So based on the plain language of the statute here, we request that the court affirm MSPB's decision. Is there no further questions? Thank you. Just very briefly, Your Honors, in rebuttal, Respondent's counsel mentioned Chapter 45 and the interplay between civilian military service. Chapter 45 is not on the record. What is in the record is Chapter 22B, specifically at Appendix 54, 22B 2.171, which talks about individuals in the government who have less than five years can use their military service to be counted as civilian service. And that's their own handbook. And to answer Your Honor's question, not on the record, but cadets do get paid. My review is that Air Force cadets receive approximately $800 a month. They get income tax and FICA taxes taken out. Obviously, I don't know the facts with regard to Mr. Montalago in the 1970s, but currently that's the case. There are no further questions. Thank you. Thanks, Counsel. Case is submitted.